UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

September 5, 2024

LETTER ORDER AND OPINION TO COUNSEL

RE:   *Faulkenberry v. Austin*
      Civil No. 1:22-cv-01150-JMC

Dear Counsel:

This case involves employment discrimination claims brought by Stacy Faulkenberry against her employer, the U.S. Department of Defense. Currently before the Court are two discovery disputes concerning redactions of Plaintiff's therapy records and Defendant's production of documents sent to Defendant's Rule 30(b)(6) designee in preparation for her deposition. The Court has considered the parties' letters summarizing their respective positions filed on August 27, 2024. (ECF Nos. 72, 73). Additionally, the Court has considered unredacted copies of the disputed documents, which the parties submitted to Chambers by email on August 28, 2024, for *in camera* review, and the deposition transcript of Defendant's Rule 30(b)(6) designee, submitted to Chambers by email on September 3, 2024. The Court finds that the issues have been fully briefed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, the Court shall GRANT Defendant's request, and the Court shall GRANT in part and DENY in part Plaintiff's request.

**I.   Background**

The parties first raised these discovery issues in an August 26, 2024, letter to the Court pursuant to the discovery dispute process outlined in the Court's Memorandum to Counsel. (ECF No. 71). The parties indicate that they have conferred on these disputes on several occasions but have been unable to resolve the following matters. *Id.*

First, Defendant seeks unredacted copies of Plaintiff's therapy records prepared by Stephanie Nelson, LCSW, Plaintiff's treating therapist. (ECF No. 72). Plaintiff produced therapy records from Ms. Nelson prior to Ms. Nelson's deposition, but redacted portions across five pages of Ms. Nelson's notes. *Id.* Plaintiff contends that the redactions were "on the sole basis of attorney-client information within the records." (ECF No. 73). Plaintiff argues that she disclosed attorney-client information to her therapist because she believed the conversations to be protected by the psychotherapist-patient privilege, and had no intention of waiving her attorney-client privilege. *Id.* Defendant responds that Plaintiff has waived her psychotherapist-patient privilege by alleging emotional distress damages, placing her mental health at issue, and designating Ms. Nelson as an expert witness in the instant action, and that, "as such, any privilege related to Ms. Nelson's notes has been waived and the unredacted records should be produced." (ECF No. 72).

1

Second, Plaintiff seeks the production of documents used to prepare Defendant's Rule 30(b)(6) designee, Laura Radney. (ECF No. 73). Defendant withheld the documents at issue on the basis of attorney-client privilege and has produced a privilege log identifying the documents as five email communications and a draft policy. (ECF No. 72). Plaintiff asserts that Ms. Radney relied on the documents to prepare for her testimony, and that "[w]here a Rule 30(b)(6) deponent has no personal (or independent) knowledge of a topic, factual documents that prepared her to discharge her obligations under Rule 30(b)(6) must necessarily be produced." (ECF No.73) (citing *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 245 (D. Md. 2010)).

Defendant contends the documents are nonetheless shielded by the attorney-client privilege because Ms. Radney sent the emails at the direction of counsel, and because Ms. Radney did not rely upon the substance of the emails in preparation for her deposition, but only upon certain attachments to those emails (which were produced). (ECF No. 72). Defendant further asserts that the draft policy is subject to both attorney-client and work product protections because it was prepared in conjunction with Agency counsel and was not enacted into policy. *Id.*

## II.    Analysis

### A.  Redactions of Plaintiff's Therapy Records

Beginning with Defendant's request for Plaintiff's unredacted therapy records, the Court agrees that the records are not shielded by the attorney-client privilege and should therefore be produced in an unredacted form. The Court acknowledges persuasive authority indicating that the disclosure of attorney-client privileged communications within the course of another privileged relationship does not constitute a waiver. *Murray v. Bd. of Educ. Of City of New York*, 199 F.R.D. 154, 155-56 (2001); Weinstein's Federal Evidence, § 511-07 ("There is no waiver when the disclosure is made in another communication that is itself privileged. For example, a person does not waive the lawyer-client privilege by telling a psychotherapist in confidence what the person told the lawyer."); Restatement (Third) of the Law Governing Lawyers § 71 cmt. b (2000) ("The presence of a stranger to the lawyer-client relationship does not destroy confidentiality if another privilege protects the communications in the same way as the attorney-client privilege."). However, this is not sufficient justification for the redaction of Plaintiff's therapy records under the present facts. The question is not merely whether the attorney-client privilege was waived at the time of Plaintiff's initial disclosure of the information to her therapist. The determinative issue is, even assuming the attorney-client privilege was *not* waived at the time of disclosure, whether the attorney-client privilege survives Plaintiff's subsequent waiver of her psychotherapist-patient privilege. The Court finds that it does not.

The Court finds *Murray v. The Board of Education of the City of New York* instructive on this issue. In *Murray*, the United States District Court for the Southern District of New York held that the plaintiff's disclosure of attorney-client communications to her psychiatrist did not waive the attorney client privilege. *Murray*, 199 F.R.D. at 156. The court nonetheless directed production of the psychiatrist's notes referencing attorney-client communications, where the plaintiff had waived her psychotherapist-patient privilege, produced other records from the

psychiatrist, and there was "no indication that plaintiff met with the psychiatrist at the direction of her attorney for the purpose of the attorney's preparation for trial." *Id.*

The Court finds that, for the same reasons expressed in *Murray*, Plaintiff has waived her psychotherapist-patient privilege with respect to Ms. Nelson's records. The parties indicate that Plaintiff has produced Ms. Nelson's records in largely unredacted form and intends to rely on Ms. Nelson's testimony in support of her claims for psychological injury and emotional distress. (ECF Nos. 72, 73). As this Court has previously held, "[i]f a plaintiff plans to present expert testimony from a treating psychotherapist regarding emotional injuries, 'there should be a presumption that all communications between the patient and the treating psychotherapist. . . must be disclosed to the opposing party.'" *Stokes v. IKEA US Retail, LLC*, No. 22-CV-01377-JMC, 2023 WL 1970476, at *5 (D. Md. Dec. 13, 2023) (quoting *Swan v. Miss Beau Monde, Inc.*, 566 F. Supp. 3d 1048, 1067 (D. Or. 2021)). "Thus, if a plaintiff identifies a treating psychotherapist as a trial witness, all communications with that therapist must be timely disclosed." *Id.* Accordingly, Plaintiff is directed to produce the disputed records to Defendant in an unredacted form within 10 days of the entry of this order.

B. *Documents Sought to Prepare Defendant's Rule 30(b)(6) Designee*

With respect to Plaintiff's request for the production of documents sought by Defendant's Rule 30(b)(6) designee Ms. Radney, the Court is not persuaded that emails between Ms. Radney and non-attorney third parties are protected by the attorney-client privilege. The Fourth Circuit has adopted the following test for determining whether the attorney-client privilege applies:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)).

Based on this Court's *in camera* review of the email communications, the majority of the communications are between Ms. Radney and other employees of the Defense Information Systems Agency—they are not communications made to "a member of the bar of a court, or his subordinate" as must be established for the applicability of the privilege. *Id.* The fact that Ms. Radney was directed to contact these individuals by Defendant's counsel in preparation for deposition does not render them privileged. Neither does the fact that Ms. Radney subsequently

3

forwarded the emails to Defendant's counsel. *In re Marriott Int'l, Inc.*, No. 19-Md-2879, 2021 WL 2222715, at *2 (D. Md. June 2, 2021) (report and recommendation adopted June 17, 2021) (explaining that "information does not become privileged merely because it is transmitted to a lawyer."); *see also Fisher v. United States*, 425 U.S. 391, 403-04 (1976) ("This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice.").

The Court recognizes that there are portions of email correspondence between Ms. Radney and Defendant's counsel contained within the email threads of the disputed documents. These are arguably subject to the attorney-client privilege and may be redacted. Accordingly, Defendant is directed to produce the disputed email communications within 10 days of the entry of this order, but may redact correspondence within the email thread between Ms. Radney and Defendant's counsel.

Turning finally to Plaintiff's request for the production of the draft policy, the Court is also not persuaded that the work product doctrine or the attorney-client privilege permits Defendant to withhold production. The Court is doubtful that the draft policy is protected work product,[1] but concedes that it may be subject to the attorney-client privilege.[2] However, the Court need not make a final determination on this issue. Regardless of whether the document is

---

[1] The work product doctrine is embodied in the Federal Rules of Civil Procedure, which provide, "[o]rdinarily, a party may not discover documents and tangible things that are prepared *in anticipation of litigation* or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). The Fourth Circuit has adopted the "because of" test in determining whether a document was prepared in anticipation of litigation. *American Piledriving Equip., Inc. v. Travelers Casualty Ins. & Sur. of America*, No. ELH-11-01404, 2011 WL 5402441, at *3 (D. Md. Nov. 7, 2011). The test considers, "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (citing *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). Documents need not have been prepared in anticipation of a particular claim, but some specificity is required, and "[i]t is not enough for the documents to relate to some unspecified claim that may conceivably be brought by some unidentified party at an unknown point in the future." *Gen. Elec. Co. v. Johnson*, No. Civ.A.00-2855(JDB), 2006 WL 2616187, at *11 (D.D.C. Sept. 12, 2006). Consequently, "documents that relate only generally to a broad agency program that is investigatory in nature are not properly considered to have been 'prepared in anticipation of litigation.'" *Id.* (internal citation omitted). Defendant has not contended that the draft policy was prepared in anticipation litigation. (ECF No. 72).

[2] Applicability of the attorney-client privilege to government attorneys varies depending upon the role of the attorney. *See, e.g., Gen. Elec. Co.*, 2006 WL 2616187, at *15 ("[W]hen government attorneys are 'in effect. . . making law,' they may not properly invoke the protections of the attorney-client privilege. In that context, the communications are made for the purpose of securing legal advice or services, but rather for the purpose of developing policy."); *Nat'l Council of La Razza v. Dep't of Justice*, 411 F.3d 350, 360 (3d Cir. 2005) ("[T]he attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy.").

protected under either doctrine, disclosure is warranted because Defendant's 30(b)(6) designee relied upon the draft policy in preparation for her deposition.

The parties both cite *Coryn Group, II v. O.C. Seacrets, Inc.*, in support of their positions. (ECF Nos. 72, 73). *Coryn Group* explains that Rule 612 of the Federal Rules of Evidence, made applicable to depositions through Rule 30(c) of the Federal Rules of Civil Procedure, "entitles an adverse party to discovery of any writing, even one subject to privilege, used to refresh a witness's memory for the purpose of testifying '(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice.'" *Coryn Group*, 265 F.R.D. at 240 (quoting Fed. R. Evid. 612; *Nutramax Labs, Inc. v. Twin Labs, Inc.*, 183 F.R.D. 458, 467 (D. Md. 1998)). "T[hree] foundational elements must be met before Rule 612 is applicable with respect to documents reviewed by a witness to prepare for a deposition: (1) a witness must use a writing to refresh his or her memory; (2) for the purpose of testifying; and (3) the court must determine that, in the interest of justice, the adverse party is entitled to see the writing." *Id.* at 242 (quoting *Nutramax*, 183 F.R.D. at 468).

In the context of the deposition of a Rule 30(b)(6) designee, an adverse party has a "heightened need to discover the factual basis for [a Rule 30(b)(6) designee's] testimony." *Id.* (quoting *Nutramax*, 183 F.R.D. at 472). This is because "where a corporate designee testifies on topics of which he denies any personal knowledge, he is an 'empty vessel' and documents reviewed on those topics in preparation for deposition necessarily informed his testimony." *Id.* at 243. Still, access is "limited only to those writings which may fairly be said in part to have an impact on the testimony of the witness." *Id.* at 242. The Court may determine whether documents were used to refresh a witness's recollection through an *in camera* review of the documents and the deposition transcript. *Id.* at 243.

Based on a review of Ms. Radney's deposition transcript and the draft policy, the Court concludes that Ms. Radney relied upon the document at issue to refresh her recollection of the 2018 Defense Information Systems Agency reasonable accommodations policies and procedures. Ms. Radney testified that she reviewed the 2018 policy in preparation for her deposition. Radney Dep. 11:21 – 12:13. Further, Ms. Radney lacks personal knowledge of key aspects of the 2018 policy, indicating that the document "necessarily informed" her testimony.[3] The Court must next balance "the policies underlying the work product doctrine against the need for disclosure to promote effective cross-examination and impeachment" in determining whether production of the draft policy is in the interest of justice. *Coryn Group*, 265 F.R.D. at 244. Relevant factors include "the witness's status and ability to recall information from memory, how many documents the witness reviewed, whether the documents contained 'pure' attorney work product,

---

[3] For example, Ms. Radney testified that she could not remember whether the 2018 policy contained information on maintaining confidentiality of an employee's reasonable accommodations request, language regarding confidentiality requirements of medical information, or the responsibilities of the disability program manager in processing a request for reasonable accommodations. Radney Dep. 58:7 – 60:5.

and whether the documents were previously disclosed." *Id.* (citing *Nutramax*, 183 F.R.D. at 469-70). The Court finds that Ms. Radney's status as a Rule 30(b)(6) designee and her reliance on her review of the policy in preparation for her deposition creates a "heightened need to discover the factual basis for [her] testimony" such that production of the draft policy is in the interests of justice.

While the central holding of *Coryn Group* relates to the work product doctrine and not the attorney-client privilege, other courts have applied the same reasoning to find that a Rule 30(b)(6) designee's reliance on documents in preparation for deposition waived the attorney-client privilege. *See, e.g., Adidas America, Inc. v. TRB Acquisitions LLC*, 324 F.R.D. 389, 401-02 (D. Or. 2017) ("Considering the issues and concerns of fairness and the attorney-client privilege and work-product protection, the Court finds that the balance favors disclosure of the documents selected by the company and provided to the corporate representative witnesses to prepare them for their depositions under FRCP 30(b)(6) on the specified topics."); *Baxter Int'l, Inc. v. Becton, Dickinson and Co.*, No. 17-C-7576, 2019 WL 6258490, at *11 (N.D. Ill. Nov 22, 2019) (ordering the production of attorney-client privileged documents used to prepare Rule 30(b)(6) designee). Accordingly, Defendant is directed to produce the draft policy to Plaintiff within 10 days of the entry of this order.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge